## CIRCUIT COURT OF MADISON COUNTY

In re Estate of
Thomas Jackson Smith, Sr.

February 1, 2005

Case No. CH-2889

BY JUDGE DANIEL R. BOUTON

This case comes before the court based on the hearing that was conducted on May 17, 2004, in the Circuit Court of Madison County. At the conclusion of the hearing, several disputed issues had to be decided by the court. These issues must be resolved in order to determine precisely how those liable for the elective share of the augmented estate will satisfy the amount of their respective contributions.

Subsequent to the hearing, the court directed counsel to submit written arguments in support of their respective positions on the disputed issues that were tried. The court has now had an opportunity to review the record of the proceedings and all of the arguments that have been presented by counsel.

*I. The Issue of Whether or Not a Discount Should Be Applied to the Value of Any Fractional Interest in Parcel B*

Three reasons have been offered as to why a discount should not be applied to the value of any interest in Parcel B that is conveyed to Mr. Smith in satisfaction of the elective share. To begin with, the parties who are liable for such share maintain that the discount argument has already been evaluated and rejected by the court. Thus, they argue that the law of the case precludes any further consideration of a discount. Nevertheless, the court is not persuaded that the law of the case has been established on this question. Rather, the court rejects this assertion for the reasons set forth in Mr. Parker's written arguments. (Responsive Argument Regarding Proceedings of May 17, 2004, pp. 20-21.) These arguments are incorporated by reference by the court as the basis for its ruling on this point.

Similarly, the court does not find compelling the second reason offered as to why a discount is unwarranted: the authority of the executor to sell Parcel B based on the order of December 10, 1997. The discretion to sell was not a mandate to sell and the failure to do so does not constitute a breach of the executor's fiduciary duty. Furthermore, the question of whether the property was sold or should have been sold by the executor has no relevance to the issue of whether the value of a fractional interest in the property should be discounted as a result of its conveyance to satisfy a contribution for the elective share under the statute.

The final reason offered in opposition to a discount is that any property that is transferred in partial satisfaction of the elective share will not be sold or purchased on the market, at an auction ordered by the court, or through a private sale. Rather, under the statute, fractional interests in the property will be conveyed to Thomas Smith, Jr., a party involved in the dispute before the court. In this case, he is the person who is now entitled to receive the elective share of the augmented estate. The result of such conveyances will increase the amount of Mr. Smith's share of his undivided interest in the tract of land, Parcel B, that is the subject of the litigation. If the court applies a discount to the fractional interests, the sum total of all such interests in the property would not equal the total fair market value of the fee simple tract of land. Yet, the only persons who hold title to the property are those who share in the estate and who are the parties in this case. Thus, any fractional shares conveyed to Mr. Smith in partial satisfaction of the elective share would unjustly or disproportionately enhance or increase his ownership interest in the property if the shares are discounted. As a result, those liable for the elective share argue that a discount would not be equitable or appropriate under the circumstances presented by this case.

In his memorandum, Mr. Parker argues that the value of the property upon its receipt by Mr. Smith is not the dispositive factor; rather, the value of what is conveyed to him by the others is what must control the analysis. (Responsive Argument Regarding Proceedings of May 17, 2004, pp. 21-22.) A careful study of the statutory scheme for augmented estates provides some support for this position. To begin with, Va. Code § 64.1-16 provides that, when a claim for an elective share is made, the surviving spouse shall have "one-third of the decedent's augmented estate." The spouse is also entitled to interest on the elective share at the legal rate from the date of the decedent's death until the liability for the share is satisfied. There is nothing in the statute that refers to the nature of any augmented estate property or how such property is titled. There is no language to suggest that the elective share claimed by a spouse should be affected by what specific property is included in the estate or

how such property is titled. When the share is selected, the result is that the spouse receives one-third of the augmented estate, plus interest.

The next relevant statute that must be noted is Va. Code § 64.1-16.2. This statute provides that when the elective share is claimed, the court shall determine the "*amount* of the elective share. . . ." (Emphasis added.) Again, there is no reference to specific augmented estate property nor is there any indication that the court should consider how any property is titled or who owns what interest in any asset in determining the amount. The elective share constitutes nothing more than a precise value arrived at by the court.

Furthermore, § 64.1-16.2(E), the statute regarding the method of satisfaction for the elective share, supports the position taken by Mr. Parker. There is nothing in the statute that requires the court to consider any of the factors cited by counsel for those liable for the elective share in this case; it simply requires the court to determine "the value conveyed" of any disputed property. Nowhere does the statute direct the court to analyze or consider the value received.

Finally, with regard to whether a discount would not be appropriate because of the circumstances presented by this case, the court is not persuaded that any special emphasis should be placed on the manner in which title to the property is held and the impact that the conveyance of fractional shares would have on the various parties. Here, each person who is liable for a portion of the elective share had the right under the statute to specify the means by which his or her respective liability would be satisfied. In each instance, those liable in this case *chose* to specify the conveyance of a fractional interest in real property. This choice was made in the context of the dispute that exists among the parties. Yet, at the same time, it must be stressed that the statute offered another clear choice by which the dispute over a discount could have been completely eliminated: the payment of cash in full satisfaction of liability. This option was not selected by any of the parties.

For the reasons set forth above, the court concludes that computing the "value conveyed" of any fractional interest in this case means ascertaining its fair market value on an individual basis without reference to what impact the transfer of such an interest will have on those who hold title to the property as tenants in common. In the court's view, whether the asset or property in question consists of personalty, a fractional interest in real property, or an intangible item, fair market value constitutes the most objective measure of value for purposes of a conveyance under § 64.1-16.2(E). The court is aware of no principle of law, statutory provision, or appellate decision in which any other method has been utilized when a dispute exists regarding the value of an item of property that is to be transferred or conveyed. Moreover, as discussed

previously, there are no provisions that suggest otherwise in the statutory scheme that is before the court. Finally, there is no equitable reason why a different measure should be used in this case. Therefore, the court rejects the argument that no discount should be applied to the interests that would be conveyed in partial satisfaction of the elective share.

## II. The Fair Market Value of the Fractional Interests

The court will now turn to the dispute regarding the fair market value of the fractional interests. Two separate issues must be addressed. The first one is the identification by the court of how many separate fractional interests are available to be conveyed to satisfy liability for the elective share. Based on what transpired among the parties prior to the trial of the case, both Benjamin B. Newsome, Jr., and Edith Thompson acquired a separate one percent undivided interest in the real property from Ms. Delavigne based on her disclaimers. At the time that Mr. Newsome and Ms. Thompson each acquired their one percent interest from Ms. Delavigne, they each already owned a separate undivided interest in Parcel B. Here, the parties disagree over whether each one percent ownership interest should be treated as a separate interest for purposes of a conveyance under the statute. The second disputed issue that must then be resolved is the amount of the discount that should be applied to the specific fair market value of each interest upon its conveyance. In this context, it should be noted that, once the court determines what separate interests can be conveyed, there is no dispute regarding the percentage amount of each interest that is held by the various parties.

The court will first address the question of how the various interests will be formulated before determining the fair market value of each individual interest. There is no disagreement that four individuals own the real property that can be divided into fractional interests and that they hold title as tenants in common. Moreover, there is no dispute regarding the percentage amount of each person's separate ownership interest in the property. This uncontested evidence can be listed as follows:

| | |
|---|---|
| Edith G. Newsome | 31.33% |
| E. Diane Thompson | 17.67% |
| Benjamin B. Newsome, Jr. | 17.67% |
| Thomas J. Smith, Jr. | 33.33% |

The court first rejects the argument that the 1% disclaimed by Ms. Delavigne and held by Benjamin B. Newsome, Jr., and the 1% disclaimed by

her and held by Edith Thompson should be valued and discounted on a separate basis without reference to the other interests in the property held by Newsome and Thompson. The statute allows a party who is liable for a portion of the elective share to convey "property included in the augmented estate." Nothing in the statute requires that any interest in property be treated separately or as an individual asset because such interest has been acquired by that person from another heir. Under the statute, if a person is the owner of the property to be conveyed and has the legal ability to do so, he or she is permitted to convey such property as a method of satisfaction provided that the property is a part of the augmented estate. Both Edith Thompson and Benjamin B. Newsome, Jr., each own a fractional interest in the property that fulfills the statutory requirements in this case. Therefore, consistent with how title to the property is held, the court finds that the interests available for transfer in satisfaction of the elective share are Edith G. Newsome's 31.33% moiety, Edith Thompson's 17.67% moiety, and Benjamin B. Newsome, Jr.'s 17.67% moiety.

The next issue that must be decided is the fair market value of each of the shares that have been identified above by the court. Specifically, the court must ascertain what discount, if any, should be applied to each separate interest. On this point, the evidence presented by the two experts must be evaluated. After a comprehensive review of the testimony of Mr. Romenesko and Mr. Salzman, a number of things have been clearly established. First, each expert is a well qualified appraiser with years of valuable experience in the field. Second, each is a credible witness whose honesty and integrity have not been impeached. Third, Mr. Salzman's expertise in the field of fractional interests is far more extensive and wide ranging than that of Mr. Romenesko. His academic background and training, his business experience through the years, and his professional knowledge in this area surpass that of Mr. Romenesko. Finally, Mr. Salzman's testimony regarding the analysis that he performed in this case was more precise, more detailed, and more comprehensive than that described by Mr. Romenesko.

As a result, based on the testimony of Mr. Salzman, the court concludes that a discount of 35% should be applied to determine the fair market value of any fractional interest that is conveyed in partial satisfaction of the elective share. This discount shall be used in computing the figure that will represent the fair market value of any fractional interest conveyed in this case.

*III. The Issue of Whether Any Additional Costs and Expenses Should be Charged against Parcel B*

The remaining issue that the court must resolve pertains to the dispute over administrative expenses and charges. The court must consider whether any additional expenses should be taken into account and charged against the value of the tract of land, Parcel B, that was the subject of the trial. If such additional expenses or charges are allowed, it would have an impact on the figure that will ultimately be applied to reduce or satisfy the amount of each person's liability for the elective share.

To begin with, the court must return to the value of the augmented estate. Here, it must be noted that this question has already been determined by the court under the provisions of § 64.1-16.1 of the Code of Virginia. The statute provides for the inclusion of administrative expenses and other listed charges in arriving at the value of the estate. In this case, once the court reached a judgment regarding the value of the augmented estate, it then decided the amount that each person must contribute to satisfy his or her portion of the elective share of the widow. The rulings on liability were premised on the value of the augmented estate; in turn, the value of the augmented estate included the administrative expenses and charges that were proven or stipulated to at the time that the court resolved those issues. Furthermore, pursuant to § 64.1-16.2(E), the contributions that are due from the parties have become final and not subject to further appeal.

At the time that the value of the augmented estate was litigated, no evidence was presented regarding subsequent or future payments or charges that would be allowed under § 64.1-16.1. No provision was made to reopen the issue of the value of the augmented estate or the respective amounts that must be contributed under § 64.1-16.2(D) to satisfy the elective share.

Based on the above, the court concludes that the charges to be applied against Parcel B have already been determined at this point. The court finds persuasive the various arguments made by Mr. Wright in Section III of his post-hearing memorandum and on pages 2 to 3 of his reply memorandum. All of these arguments are incorporated by reference and will serve as part of the reasoning for the court's ruling. The charges that will be used in the computations will be those identified by Mr. Wright.

## Conclusion

The transfer of any fractional interest in the property in satisfaction of the elective share shall be completed in a manner that is consistent with the rulings set forth in this letter opinion. At this point, each party is granted leave to submit an order that contains the court's findings. The complexity of the case and the computations involved lead the court to conclude that it would be appropriate to depart from its usual practice of directing one attorney to prepare an order. This will allow each side to present to the court a single, comprehensive order for consideration. Furthermore, in this case, counsel may submit letters in support of their respective orders. Any order that is submitted need not repeat all of the provisions contained in the court's letter. It can simply be incorporated by reference. The court will review the competing orders and determine whether one can be entered or whether a further hearing is necessary before the matter can be concluded.